IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

7-ELEVEN, INC.
 :
 :
   v. : Civil Action No. DKC 12-3336
 :
ETWA ENTERPRISE, INC., et al.
 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this contract dispute is a motion for default judgment filed by Plaintiff 7-Eleven, Inc. (ECF Nos. 27, 28).[1] The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted in part and denied in part.

I. **Background**

Plaintiff commenced this action on November 14, 2012, by filing a complaint against ETWA Enterprise, Inc. ("ETWA"), and its principal, Elias Tefera. According to the complaint, on or about January 16, 2003, Mr. Tefera entered into franchise and security agreements with 7-Eleven, which granted him the right to operate a 7-Eleven store in Lanham, Maryland, and to use associated trademarks. Several years later, Mr. Tefera assigned the franchise agreement to ETWA and executed a guaranty in which

---

[1] Plaintiff separately filed its motion (ECF No. 27) and memorandum and exhibits (ECF No. 28).

he "personally and unconditionally" guaranteed ETWA's debts, liabilities, and obligations under the franchise agreement, as well as any attorneys' fees and costs incurred by 7-Eleven in enforcing the agreements. (ECF No. 1 ¶ 19).

The franchise agreement required Defendants, *inter alia*, to maintain a minimum net worth in the store of $15,000 at all times, which was to be demonstrated by monthly financial statements reporting assets and liabilities. The agreement further provided that if Defendants failed to maintain the required net worth, 7-Eleven had the right, after giving notice and an opportunity to cure, to terminate the franchise. Upon termination, Defendants were required to "[p]eaceably surrender the Store and 7-Eleven Equipment[;] . . . transfer to [7-Eleven] the Final Inventory[; and] . . . [t]ransfer [to 7-Eleven] the Receipts, Cash Register Fund[s], prepaid Operating Expenses, money order blanks, bank drafts, lottery tickets and Store supplies[.]" (*Id*. at ¶ 28). Defendants further agreed to cease using all 7-Eleven marks in the event of termination.

Starting in early 2011, Defendants consistently failed to maintain the required minimum net worth of $15,000. Plaintiff sent numerous notices of material breach and provided multiple opportunities to cure. Defendants, however, failed to avail themselves of these opportunities and the franchise grew increasingly deeper in debt. As of October 2012, the store's

net worth was "negative $239,417.15, or $254,417.15 below the $15,000 minimum [n]et [w]orth ETWA must maintain under . . . the [f]ranchise [a]greement." (*Id*. at ¶ 32). On or about October 12, 2012, 7-Eleven hand-delivered to Defendants a notice of material breach, identifying a number of required deposits Defendants had failed to make and advising that if the default was not cured within three business days, the franchise agreement would be terminated and Defendants would be required to relinquish possession of the store.

When Defendants failed to cure their numerous breaches, 7-Eleven dispatched personnel to begin conducting an audit of the store's inventory on October 26, 2012. Upon Mr. Tefera's arrival on that date, Plaintiff's representatives explained that they were taking possession of the store and offered him the opportunity to sell ETWA's interest to a third-party. Mr. Tefera declined this offer and refused to permit 7-Eleven to take possession after the audit was complete. Thereafter, 7-Eleven withdrew all financing and payroll support, but Defendants continued to operate the store with very limited resources.

The complaint alleged breach of the franchise and security agreements, breach of guaranty, trademark infringement, and unfair competition under federal and Maryland law. Plaintiff

sought preliminary and permanent injunctive relief, unspecified monetary damages, and attorneys' fees and costs.

Concomitantly with the complaint, Plaintiff filed a motion for temporary restraining order and preliminary injunction. Judge Williams conducted an *ex parte* telephonic hearing on the motion for temporary restraining order on November 15, 2012. Upon finding a strong likelihood that Plaintiff would succeed on the merits, that irreparable injury would result if 7-Eleven were not permitted access to the store, that the balance of equities tipped decidedly in favor of Plaintiff, and that emergency injunctive relief was in the public interest, Judge Williams issued an order temporarily enjoining Defendants from denying 7-Eleven access to the store, from failing to perform all required bookkeeping, and from transferring or disposing of any store assets pending further proceedings.

At the preliminary injunction hearing, held November 21, 2012, Plaintiff presented evidence of Defendants' breaches of the franchise agreement and continuing trademark infringement. Mr. Tefera personally appeared, without counsel, and did not present any material evidence in rebuttal. At the conclusion of the hearing, the court issued a preliminary injunction ordering Defendants to surrender possession of the store at 3:00 p.m. on the same date; enjoining them from using 7-Eleven marks, from unfairly competing with 7-Eleven, or disposing of store assets;

4

and directing Defendants to deliver to 7-Eleven any and all property bearing its trademarks.

On January 8, 2013, noting that Defendants had failed to respond to the complaint, the court directed Plaintiff to file and serve motions for entry of default and default judgment or explain why such action was not appropriate. On February 7, Plaintiff filed motions for entry of default and default judgment. Defendants did not respond, and the clerk entered default on March 5.

**II. Standard of Review**

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party, pursuant to Fed. R.Civ.P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. See *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md.

5

2002) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive, *see S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir. 1980)).

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Lawbaugh*, 359 F.Supp.2d at 422. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Management Dynamics, Inc.*, 515 F.2d 801, 814 (2nd Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981)). While

the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S., Inc.*, Civ. No. WDQ-09-3174, 2010 WL 1568595, at *3 (D.Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

**III. Analysis**

Taking as true the well-pleaded allegations of the complaint, as the court must upon entry of default, Plaintiff has established Defendants' liability for breach of the franchise and guaranty agreements.[2] Plaintiff seeks as damages a total award of $282,141.00, which it asserts "is fixed and owing under the Franchise Agreement and Guaranty between the parties," as well as a "a permanent injunction awarding permanent control of the Store to 7-Eleven" and an award of attorneys' fees and costs in the amount of $51,908.75. (ECF No. 27, at 1-2).

---

[2] Plaintiff does not seek default judgment on its trademark infringement and unfair competition claims, and asks that those counts be dismissed without prejudice. (ECF No. 27, at 1). That request will be granted.

7

In support of its request for damages, Plaintiff submits the declaration of Brian Padgett, 7-Eleven's senior director of merchandise accounting and compliance. Mr. Padgett attaches to his declaration a "financial summary" of Defendants' store, dated January 10, 2013, which "organizes, summarizes, and makes calculations based upon information that ETWA and the cash registers at the Store report to 7-Eleven." (ECF No. 28-1, at 3). The financial summary reflects that, as of the end of 2012, the net worth of Defendants' store was $282,141.42 less than the required minimum net worth of $15,000. (*Id*. at 207). Mr. Padgett avers that this amount "includes, but is not limited to, deposits that ETWA failed to make, unauthorized cash draws and advances that ETWA received, and the gross profits due to 7-Eleven under the terms of the Franchise agreement." (*Id*. at 4). The declaration does not specifically point to any contractual provision entitling Plaintiff to recover this amount, but the attached franchise agreement provides that, following termination, any unpaid balance on Defendants' account is "immediately due and payable" (ECF No. 28-1, at 38), and Mr. Tefera's guaranty "personally and unconditionally guarantees to 7-Eleven . . . full and prompt payment when due of any and all indebtedness and liabilities" (*id*. at 186). Thus, Plaintiff has established entitlement to a default judgment in the amount of $282,141.00.

Insofar as the complaint seeks injunctive relief related to only the trademark infringement and unfair competition claims, which Plaintiff now seeks to dismiss, its request for a permanent injunction would appear to be moot. Nevertheless, Plaintiff is clearly entitled to terminate Defendants' franchise and take permanent custody of the store due to Defendants' breach of the franchise and guaranty agreements. As Plaintiff observes, "this relief is expressly anticipated by the Franchise Agreement" (ECF No. 28, at 5), and a declaration to that effect would be equitable and in the public interest. Considering also that no prejudice could inure to Defendants and that the preliminary injunction will expire upon entry of a final judgment, Plaintiff is entitled to limited declaratory relief.

Plaintiff's request for attorneys' fees and costs must be denied, however. Plaintiff seeks a total award of legal fees in the amount of $51,908.75, submitting in support the declaration of attorney Rhett E. Petcher. Mr. Petcher asserts that, to date, his firm has "expended 87.4 hours at the rates ranging from $260 to $585 per hour" on this litigation, with fees and costs totaling $35,995.50. (ECF No. 28-2 ¶ 3). He further estimates that the firm "shall expend (and has, in part, expended but not yet billed) approximately 30 hours in pursuit of [] post-judgment enforcement efforts at an average rate of $450 per hour, which equates to an additional $13,500 in

anticipated fees and costs." (*Id*. at ¶ 4). Mr. Petcher attaches to his declaration summaries of billing statements, which reflect the hours billed by a number of attorneys, with associated amounts, and a list of costs consisting of, *inter alia*, fees associated with electronic research, copy work, transcript requests, postage, and messenger services. He cites as the basis of this request the guaranty agreement, in which Mr. Tefera "agrees to pay . . . all costs, expenses, and reasonable attorneys' fees at any time paid or incurred by [7-Eleven] in endeavoring to collect [ETWA's] indebtedness and liabilities or obtain performance of [ETWA's] obligations[.]" (ECF No. 28-1, at 186).

Plaintiff has established entitlement to an award of attorneys' fees and costs against Mr. Tefera, but has failed to demonstrate that the amounts it seeks are reasonable. In determining the amount that constitutes a reasonable attorneys' fee, the court employs a hybrid method, which begins with calculation of the lodestar amount — *i.e.*, the product of the reasonable hours expended on the litigation multiplied by a reasonable hourly rate — followed by adjustment, as appropriate, based on the factors enunciated in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). As this court has explained:

> Absent circumstances warranting adjustment, the lodestar figure represents the proper total fee award. *Wileman v. Frank*, 780 F.Supp. 1063, 1064 (D.Md. 1991) (citing *Blum v. Stenson*, 465 U.S. 886, 888, 79 L.Ed.2d 891, 104 S.Ct. 1541 (1984)). In deciding what constitutes a "reasonable" number of hours and rate, the district court generally is guided by the following factors:
>
>> "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."
>
> *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *EEOC v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990) (quoting *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978))).

*CoStar Group, Inc. v. LoopNet, Inc.*, 106 F.Supp.2d 780, 787 (D.Md. 2000); *see also Int'l Ass'n of Machinists & Aerospace Workers v. Werner–Matsuda*, 390 F.Supp.2d 479, 490 (D.Md. 2005).

The party seeking fees bears the burden of proving the reasonableness of the amount sought. *See Robinson v. Equifax*

*Information Services, LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009). "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *In re Botero-Paramo*, No. 11-1886, 2012 WL 2055005, at *8 (4th Cir. June 8, 2012) (quoting *Robinson*, 560 F.3d at 243) (internal marks and emphasis removed).

Here, the court cannot determine the lodestar amount because there is insufficient evidence that the hourly rates or number of hours are reasonable. Mr. Petcher's declaration does not indicate the experience level of the attorneys who worked on the case, nor has Plaintiff presented any other evidence in support of the reasonableness of the hourly rates, which in some cases greatly exceed the presumptively reasonable amounts set forth in Appendix B of the court's Local Rules. Moreover, the billing summaries do not break down each item of work by task; thus, there is no way to assess whether the work performed was necessary and/or duplicative in any respect. Furthermore, Plaintiff has not identified any authority that would entitle it to an award of "anticipated legal fees and costs," nor is the court aware of any.

With respect to costs, Plaintiff seeks reimbursement for certain items that are generally not taxable in this district, *see* Guidelines for Bills of Costs § III (3d Ed. June 1, 2013),

12

and no documentation is presented in support of others. At present, the record supports only that Plaintiff is entitled to reimbursement of the filing fee in the amount of $350.00. Aside from that amount, Plaintiff's request for attorneys' fees and costs will be denied. It will be permitted, however, to renew its motion by filing a properly supported fee petition and bill of costs within fourteen days.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for default judgment will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge